UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **CHARTER COMMUNICATIONS, INC.,** | : | **CIV. CASE NO. 3-25-CV-025-SFR** |
| | : | |
| **Plaintiff,** | : | |
| **v.** | : | |
| | : | |
| **PRASHANTH MYLA,** | : | |
| **Defendant.** | : | **JANUARY 29, 2025** |
| | : | |

**DEFENDANT'S MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS OR TO TRANSFER**

Defendant, Prashanth Myla ("Myla"), submits this memorandum of law in support of his Motion to Dismiss or Transfer.

**I.     ARGUMENT SUMMARY**

The state of Colorado, as a matter of public policy, has narrowly limited an employer's ability to restrict an employee's freedom to work.  Under Colorado law, restrictive covenants are void ab initio unless they meet certain narrow exceptions and include reasonable limitations on time and scope. *See* Colo. Rev. Stat. § 8-2-113. Likewise, Colorado law also requires an employer to meet strict notice requirements when attempting to restrict an employee's ability to work.  *Id.* Plaintiff failed to provide the required notices to Myla.  Failure to adhere to the notice requirement voids the noncompete.

Colorado law also requires that disputes regarding restrictive covenants be litigated in Colorado.  Despite this edict, Plaintiff has brought its claims thousands of miles from Colorado. Plaintiff's decision to attempt to litigate this matter in Connecticut contravenes Colorado law. Myla did not agree to litigate this dispute in this forum.

Despite Colorado law, Plaintiff, Charter Communications, Inc. ("Charter" or "Plaintiff"), seeks to enforce restrictive covenants against Myla, a Colorado resident who worked for Charter in Colorado. The restrictive covenants are impermissibly broad, purportedly limiting Myla's ability to engage in work anywhere in the world for any company in the business of distributing video programming, providing Internet access, providing voice or data service, providing wireless communication services, or the sale of any analog or digital technology.

Not only are these claims subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) because they fail to state claims for breach of the alleged covenants at issue, but this Court is the wrong forum for this dispute. The Court should dismiss the case pursuant to Rule 12(b)(3) or transfer the case to the District of Colorado pursuant to 28 U.S.C. §§ 1406(a) or 1404(a). A Colorado court should hear any claims regarding to Charter's attempt to restrict the employment of a Colorado resident. C.R.S. § 8-2-113(6) ("Notwithstanding any contractual provision to the contrary, Colorado law governs the enforceability of a covenant not to compete for a worker who, at the time of employment primarily resided and worked in Colorado.")

## II.    FACTS

### A.    Myla is an individual residing in Colorado.

Plaintiff alleges that it is headquartered and has its principal place of business in Stamford, Connecticut, and provides services in 41 states, including Colorado and Connecticut. Compl. (doc. 1) at ¶¶ 1, 11. Plaintiff alleges that Myla is a citizen of Colorado. *Id*. at ¶ 12.

### B.    The RSU Agreement and the SO Agreement

Plaintiff's claims arise from Myla's alleged violation of two agreements: the January 16, 2024, Restricted Stock Unit Agreement between Charter and Myla, attached as Exhibit A ("RSU Agreement"); and the January 16, 2024 Nonqualified Stock Option Agreement between Charter

and Myla, attached as Exhibit B ("SO Agreement," with the RSU Agreement, "Agreements"). *Id.* at ¶ 6.[1]

Plaintiff contends that Myla "voluntarily accepted grants of restricted Charter stock and stock options, which were conditioned upon his agreement to the terms and conditions in various stock options and restricted stock unit agreements, including certain restrictive covenants." *Id.* ¶ 22. Although Plaintiff alleges Myla signed fifteen such agreements, its claims are limited to breach of the RSU Agreement and the SO Agreement. *Id.* at ¶¶ 44, 53, 58-59.

Neither the RSU Agreement nor the SO Agreement include any notice that the agreements include provisions that are purported restrictive agreements. *See* Exs. A, B. The RSU Agreement is 18 pages long, and the SO Agreement is 21 pages, and both include multiple provisions relating to much more than the alleged restrictive covenants. *Id.* Neither agreement includes a notice in clear and conspicuous terms that was signed by Myla. *See id.*

C.    **The Agreements' Forum Provisions**

Plaintiff contends that the RSU Agreement chooses Connecticut as the "forum for resolving disputes arising" from that agreement. Compl. at ¶ 16 (citing RSU Agreement ¶ 7.2). The provision in the RSU Agreement relating to dispute resolution is paragraph 9.1 (not 7.2), which states in part:

> Any controversy, dispute, or claim between the parties to this Agreement . . . shall be settled exclusively by arbitration, before a single arbitrator, in accordance with this Section 9 and the then most applicable rules of the American Arbitration Association. Judgment upon any award rendered by the arbitrator may be entered by any state or federal court having jurisdiction thereof. . . . Arbitration shall be the exclusive remedy for determining such dispute, regardless of its nature.

---

[1] In considering a Motion to Dismiss, this Court can consider the Agreements as they were referenced in the Complaint. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) (noting that a Court's review on a motion to dismiss "is limited to the facts asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated by reference").

> Notwithstanding the foregoing, either party may in an appropriate matter apply to a court for provisional relief . . . on the ground that the award to which the applicant may be entitled in arbitration may be rendered ineffectual without provisional relief.  Unless mutually agreed by the parties otherwise, any arbitration shall take place in Stamford, Connecticut.

RSU Agreement ¶ 9.1. The SO contains a similar provision, which requires, unless mutually agreed by the parties otherwise, arbitration in St. Louis, Missouri.  SO Agreement ¶ 7.1.

### D.     The Agreements' Purported Restrictive Covenants

Paragraph 6.3 of the RSU agreement is titled "Non-Competition and Non-Interference." The scope of the purported provision is potentially global in scope and applies to a two-page definition of "Competitive Businesses" defined in an appendix to the agreement:

> the Participant will not, directly, or indirectly, for Participant's own benefit or for the benefit of any other person or entity other than the Company:
>
> (i)      in the United States ***or any other country or territory where the Company then conducts its business***: engage in, operate, finance, control or be employed by a "Competitive Business"; serve as an officer or director of a Competitive Business regardless of where Participant then lives or conducts such activities); perform any work as an employee, consultant . . . , contractor, or in any other capacity with, a Competitive Business . . . or directly or indirectly provide any services or advice to any business, person or entity who or which is engaged in a Competitive Business. . . .  A "Competitive Business" is any business, person, or entity who or which, where the Company conducts business, directly or indirectly through any entity controlling, controlled by or under common control with such business, offers, provides, markets or sells any service or product of a type that is offered or marketed by or competition with a service or product offered or marketed by the Company at the time Participant's employment terminates or is being planned to be offered or marketed by the Company with Participant's participation; or who or which in any case is preparing or planning to do so."

Ex. A, RSU Agreement ¶ 6.3.2(i) (emphasis added).  The "Competitive Business Activities" are set forth on Schedule 1 to the RSU Agreement and effectively include any business engaged in the distribution of video programming, the provision of Internet access or portal service, the provision

of voice and/or data service, the provision of wireless communications, and the sale of other provision of advertising of any analog or digital technology.  RSU Agreement at pp. 17-18.  While the schedules to each Agreement provide a list of alleged competitive companies, Metronet is not listed on the schedule for either Agreement.  *Id.*; Ex. B, SO Agreement at pp. 19-20.

The RSU Agreement also includes other purported restrictive covenants regarding. Myla's ability to "contact, solicit or provide any service or product of a type offered by, or competitive with, any product or service provided by the Company," and to "solicit, recruit, or hire for employment or provision of consulting service, any person or persons who are employed by Company or any of its subsidiaries or affiliates, or who were so employed at any time within a period of six (6) months immediately prior to the date Participant's employment terminated."  Ex. A, RSU Agreement  at ¶¶ 6.3.2(ii) and (iii).

The RSU Agreement reiterates the scope of the alleged restrictive covenants: "Participant recognizes that the existing business of the Company extends to various locations and areas throughout the United States and may extend hereafter to other countries and territories and agrees that the scope of Section 6.3 shall extend to any part of the United States, and any other country or territory, where the Company operates or conducts business, or has concrete plans to do so at the time Participant's employment terminates."  *Id*. at ¶ 6.3.3.

The SO Agreement purports to include similar restrictive covenants and apply to a similarly broad definition of "Competitive Businesses."  Ex. B, SO Agreement at ¶¶ 9.3.2(i), (ii), (iii), and pp. 19-20.  It also provides that the alleged covenants extend throughout the United States and potentially to other countries and territories.  *Id*. at ¶ 9.3.3.

### E.    Myla resigns his employment with Charter.

Plaintiff alleges that Myla resigned his employment with Charter on October 2, 2024. Compl. at ¶ 32.  Plaintiff does not allege that Myla took any information from Charter. Plaintiff does not contend that he took any allegedly proprietary or confidential information, that he retained confidential or proprietary documents or communications, or that he took his Charter devices or laptops with him. Plaintiff likewise does not allege that prior to his resignation from Charter Mr. Myla accessed confidential or proprietary documents or communications.

Plaintiff alleges simply that it learned that Myla "started working for Metronet as its Senior Vice President and Chief Information Office, in the same geographic area in which he worked for Charter, performing the same or similar services for Metronet as he did for Charter."  *Id*. ¶ 34. Plaintiff further alleges that Metronet "is a direct competitor of Charter that offers the same residential and commercial internet services to customers in Colorado and elsewhere." *Id*. at ¶ 35.

Apparently based solely on him switching companies, Plaintiff characterizes Myla's actions as a "flagrant violation of the non-competition and other covenants." *Id*. at ¶ 36. Plaintiff also lists a laundry list of alleged violations of the Connecticut Uniform Trade Secrets Act, "upon information and belief," and without any specific allegation about how or what Myla has taken from Charter. *Id*. at ¶ 37.

## III. LAW AND ARGUMENT

### A.    The Court should dismiss for improper venue or transfer this action to the District of Colorado.

Pursuant to 28 U.S.C. § 1391, a civil action may be brought in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; [or] (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated[.]"

"[T]he plaintiff bears the burden of establishing that venue is proper." *Cold Spring Harbor Lab. v. Ropes & Gray LLP*, 762 F. Supp. 2d 543, 551 (E.D.N.Y. 2011). When a federal action is filed in an improper venue, the Court can dismiss the case pursuant to Rule 12(b)(3). Similarly if the action has been filed in the wrong district, the district court in which a case was improperly filed in the wrong venue, shall dismiss the case. 28 U.S.C. § 1406(a). Alternatively, the district court, if it be in the interests of justice, can "transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

### 1.    The Agreements do not include a forum selection clause for this Court.

As an initial matter, Plaintiff pleads the venue is proper in the District of Connecticut because "the parties signed a binding clause designating Connecticut as the forum for resolving disputes arising from the" RSU Agreement. Compl. ¶ 16. This argument and allegation misstates the RSU Agreement.[2] The RSU Agreement does not designate the state or federal courts of Connecticut as the proper forum for this dispute. The only provision relating to Connecticut as a forum pertains to arbitration, "Unless mutually agreed by the parties otherwise, any arbitration shall take place in the City of Stamford, Connecticut." Ex. A, RSU Agreement at ¶ 9.1 (emphasis added); *see also* Ex. B, SO Agreement at ¶ 7.2 (choosing an arbitral forum in the "City of St. Louis, Missouri").

While the RSU Agreement provides that a party may seek provisional relief in a court, that language does not require Connecticut courts for such a resolution. "[E]ither party may in an appropriate matter apply *to a court* for provisional relief." *Id.* (emphasis added); *see also* SO Agreement at ¶ 9.1 (same).

---

[2] Contrary to Plaintiff's allegation, Mr. Myla also did not agree that the forum for resolving all disputes is in Connecticut courts.

Accordingly, rather than choosing the District of Connecticut, both the Agreements are silent as to where an action seeking provisional relief, like the instant action, can be brought.

>        **2.        A "substantial part of property" at issue is not located in Connecticut.**

Plaintiff also alleges that venue is proper in this Court because "a substantial part of property that is the subject of this action is situated in Connecticut, such as Charter's trade secrets and confidential information." Compl. at ¶ 17. However, the alleged misuse of Plaintiff's trade secrets and confidential information is by Myla in Colorado, not Connecticut. *Id.* at ¶¶ 34-37. While it is not clear what trade secrets or confidential information was allegedly taken by Myla, it appears that Charter's complaint is that he may "inevitably" share these trade secrets or confidential information with Metronet in Colorado. *Id.* at ¶¶ 34-35. Accordingly, venue is not proper in Connecticut.

>        **3.        Colorado is the proper venue for this dispute.**

Pursuant to 28 U.S.C. § 1391(b)(1) or (2), the proper venue for this case is the District of Colorado, where Myla lives, and where a "substantial part of the events or omissions giving rise to the claim occurred." Because Colorado is the only proper venue for this action and Plaintiff cannot carry its burden to show that this is a proper venue, the Court should dismiss the case pursuant to Rule 12(b)(3) or transfer the case to the District of Colorado pursuant to 28 U.S.C. § 1406.

>        **4.        In the alternative, the Court should transfer this action to the District of Colorado for the convenience of the parties and witnesses.**

Pursuant to 28 U.S.C. § 1404(a), the Court, "[f]or the convenience of parties and witnesses, in the interest of justice, . . . transfer any civil action to any other district or division where it might have been brought[.]" As set forth above, the District of Colorado is a district where this action could have been brought, and venue is appropriate there pursuant to 28 U.S.C. § 1391.

In determining whether to exercise its discretion to transfer a case pursuant to section 1404(a), the Court must balance the following factors:

> (1) The convenience of the witnesses; (2) the convenience of the parties; (3) the location of the relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight according the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice.

*Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 743 (S.D.N.Y. 2013); *see also Corley v. United States*, 11 F.4th 79, 89 (2d Cir. 2021). "The convenience of the witnesses and the locus of the operative facts of the case are typically regarded as the primary factors." *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 396 (S.D.N.Y. 2014). These factors weigh in favor of transfer to Colorado or are neutral.

First, a Colorado forum is most convenient to the witnesses. To the extent that Charter alleges that Myla took trade secrets and confidential information when he left his employment, the pertinent witnesses will be. Myla and the individuals to whom he allegedly shared this information. These individuals are all located in Colorado. The primary employees with whom Myla worked with at Charter are also located in Charter's Colorado office. Thus, the likely witnesses to this dispute are largely in Colorado.

The convenience of the parties also weighs in favor of a Colorado forum. While Charter may be headquartered in Connecticut, it has a Colorado office, where Myla worked, with the employees with whom he worked, and where Myla allegedly accessed and used the information at issue.

The location of documents is a neutral factor, as documents may be located in Connecticut or Colorado. This issue, however, is not often dispositive in a dispute where the discovery will

involve electronically stored documents that will likely be produced electronically. *Royal & Sun Alliance Ins., PLC v. Nippon Express USA, Inc.*, 202 F. Supp. 3d 399, 409 (S.D.N.Y. 2016).

The locus of operative facts is Colorado, not Connecticut. As set forth above, Charter's allegations relate to Myla's work for Charter in Colorado and his new employment with Metronet in Colorado. These are the "events from which the claim arises," which is the relevant inquiry when considering this factor. *Id*. at 407-408 (citation and quotation omitted).

The availability of process to compel the attendance of unwilling witnesses also favors Colorado. Any relevant witnesses in Connecticut are likely to be Charter employees. The potential third-party witnesses to this dispute are likely to be Myla's colleagues at Metronet, who may not be willing to travel voluntarily and cannot be compelled to Connecticut. *See* Fed. R. Civ. P. 45(c)(1) (limiting a court's power to compel a nonparty's attendance).

The relative means of the parties also favors a Colorado forum.  Myla is an individual residing in Colorado and is being sued by a large corporation with operations in 41 states.

The forum's familiarity with the governing law strongly favors a Colorado forum and is consistent with Colorado public policy.  As discussed in depth below, Colorado law governs this dispute, and accordingly, a Colorado court is best suited to hear this dispute.

While Plaintiff chose a Connecticut forum, the Court should not weigh this factor heavily because Connecticut is an improper forum for this dispute.

Finally, trial efficiency and the interests of justice weighs in favor of a Colorado forum. Some courts look to caseload statistics to compare district courts. *See Speedfit LLC v. Woodway U.S.*, 53 F. Supp. 3d 561, 575, 578 (E.D.N.Y. 2014). Viewing the statistics from the most recent United States District Courts – National Judicial Caseload Profile, the median time from filing to trial in civil cases is shorter in the District of Colorado (32.4 months) than in the District of

Connecticut (40.5 months). *See* https://www.uscourts.gov/data-news/data-tables/2024/09/30/federal-court-management-statistics/n-a-1 (last accessed January 28, 2025); *Speedfit LLC*, 53 F. Supp. 3d at 578. This factor accordingly weighs in favor of transferring to the District of Colorado. *See In re Hanger Orthopedic Grp., Inc. Sec. Litig.,* 418 F.Supp.2d 164, 171 (E.D.N.Y.2006) (holding that only "minimal weight" should be afforded to this factor given a difference in median disposition time of 2.7 months).

Considering all the factors, transfer to the District of Colorado is warranted as the factors weigh in favor of such a transfer or are neutral.  For these reasons, if the Court does not dismiss this action, it should be transferred to the District of Colorado pursuant to 28 U.S.C. § 1404(a).

**B.    The Court should dismiss this action pursuant to Rule 12(b)(6) because the restrictive covenants cannot be enforced.**

Plaintiff's first and second claims for breach of the Agreements fail as a matter of law because the restrictive covenants that Charter attempts to enforce are void. The restrictive covenants not only fail to comply with Colorado's notice provision but are also overbroad and effectively unlimited in geographic scope.

### 1.    Colorado law applies to this dispute.

In determining what law governs this dispute, the Court must apply Connecticut's choice-of-law rules. *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 393 (2d Cir. 2001) ("A federal trial court sitting in diversity jurisdiction must apply the law of the forum state to determine the choice-of-law."). Connecticut's choice-of-law rules are in accordance with the Restatement (Second) of Conflict of Laws section 187. *See Elgar v. Elgar*, 238 Conn. 839, 850 (1996).

While the Agreements contain a Delaware choice-of-law provision, this provision should not be applied.  Under Connecticut law, the parties' selected governing law will not apply if "'(b) application of the law of the chosen state would be contrary to a fundamental policy of a state

11

which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.'" *Id.* (*quoting* Restat. 2d of Conflict of Laws, § 187(2)(b)).  Colorado has a strong material interest to this dispute, while Delaware has virtually no connection or interest.

### a.    Colorado has the strongest interest in this litigation.

The state with the greatest interest in this litigation is Colorado, as Colorado has a strong public policy in protecting its employees from restrictive covenants.  Colorado has codified this interest by statute:

> A covenant not to compete that applies to a worker who, at the time of termination of employment, primarily resided or worked in Colorado may not require the worker to adjudicate the enforceability of the covenant outside of Colorado. Notwithstanding any contractual provision to the contrary, Colorado law governs the enforceability of a covenant not to compete for a worker who, at the time of employment, primarily resided and worked in Colorado.

C.R.S. § 8-2-113(6). (emphasis added).

Colorado also is the state where the "impact of the litigation will be felt," and it has a greater connection to the facts of the case. *United Rentals v. Pruett*, 296 F. Supp 2d 220, 232 (D. Conn. 2003). During his employment with Charter and Metronet, Myla lived and worked in Colorado.  The Agreements were entered into by Myla in Colorado and relate to his work for Charter in Colorado.

### b.    Delaware has virtually no interest in this litigation.

Although Charter is incorporated in Delaware, this particular dispute has no connection to Delaware.  Courts in this judicial district have determined that choice-of-law provisions applicable to restrictive covenants do not apply when the employee lives and works in another state.  In *United Rentals*, the court considered the law applicable to a restrictive covenant with a Connecticut

choice-of-law provision in an agreement between an employer with headquarters in Connecticut and an employee who lived and worked in California. 296 F. Supp. at 223-24.

The court determined that California had a greater interest in the dispute. The court noted that California, like Colorado, "has [an] interest in protecting its employers and their employees from anticompetitive conduct by out-of-state employers. . . . The ultimate decision in this case will affect whether Pruett, a California resident, will be permitted to remain with his California employer, Brookstone Equipment, and whether Brookstone is entitled to retain the employee of its choice." *Id*. at 232 (citation and quotation omitted).

This dispute is similar. The decision in this case will affect whether Myla, a Colorado resident, can continued to work for Metronet, his Colorado employer, and whether Metronet is entitled to retain the employee of its choice, in Colorado. The *United Rentals* court determined: "Although Connecticut is the state in which United's headquarters are located, it otherwise has little connection to the facts of this litigation, and no strong public policy in favor of keeping this case in Connecticut. On balance, then, it is clear that California's material interest in the outcome of this litigation significantly outweighs Connecticut's interest." *Id.* at 232-233.

The only connection to this case to Delaware is that it is the place of Charter's incorporation. It has no other connection to the facts, circumstances, or outcome of this litigation. Colorado's material interest in the litigation therefore significantly outweighs Delaware's.

          **c.**     **The application of Delaware law would contravene Colorado law and public policy.**

If another state possesses a materially greater interest in the litigation, the Restatement (Second) of Conflict of Laws, section 187(b), requires identifying whether the laws of the chosen state--Delaware--conflict with the fundamental policy of the former state, Colorado. Under Colorado law: "Notwithstanding any contractual provision to the contrary, Colorado law governs

the enforceability of a covenant not to compete for a worker who, at the time of termination of employment, primarily resided and worked in Colorado." Colo. Rev. Stat. § 8-2-113(6). Thus, applying Delaware law would conflict directly with not only Colorado's public policy, but its explicit law governing restrictive covenants.

Delaware and Colorado law differs significantly in the enforcement of restrictive covenants. Colorado not only requires that disputes with Colorado employees regarding covenants not to compete be litigated in Colorado, but, by statute, any covenant not to compete is void unless it meets narrow exceptions, complies with specific notice requirements and is limited in time and scope. *See* C.R.S. § 8-2-113. Delaware does not contain an equivalent requirement.

Specifically, Colorado law requires that an employer provide a separate notice of a covenant not to compete to the employee and be signed by the employee. C.R.S. § 8-2-113(4). In this case, to comply with the statute, Charter needed to give such notice of its purported restrictive covenants to Mr. Myla at least fourteen days before the earlier of "the effective date of the covenant" or "the effective date of any additional compensation or change in the terms of conditions of employment that provides consideration for the employment." *Id*. at § 8-2-113(4)(a)(II)(A-B). The required notice needed to be provided "in a separate document from any other covenants between the worker and employer and in clear and conspicuous terms in the language in which the worker and employer communicate about the worker's performance." *Id*. at § 8-2-113(4)(b). The required notice also needed to be signed by the employee, here Myla. *Id*. The notice must also (i) be provided with a copy of the agreement containing the noncompete; (ii) identify the agreement by name and state that the agreement contains a noncompete "that could restrict the worker's options for subsequent employment following their separation from the

employer;" and (iii) direct the employee to the specific sections of the agreement that contain the covenant not to compete. *Id*. at §§ 8-2-113(6)(d)(I-III).

On the other hand, under Delaware law, an enforceable covenant not to compete must only "be reasonably limited geographically and with respect to the restriction on time; they must as well foster a legitimate economic interest of the plaintiff." *McCann Surveyors, Inc. v. Evans*, 611 A.2d 1, 3 (Del. 1987); *see also Bakotic v. Bako Pathology LP*, Docket No. N17C-12-337 WCC, 2021 Del. Super. LEXIS 998, AT *30 (Del. Super. Nov. 2, 2021).

There are thus significant differences in the application of Delaware and Colorado law with respect to this dispute. Given Colorado's strong interest in the dispute and its strong public policy against the enforcement of restrictive covenants, the application of Delaware law would contravene both.

### d.    The Court should apply Colorado law.

Once the court determines that a state has a materially greater interest in the litigation and that applying the law of a different state would conflict with the public policy of that state, the final factor to consider is which state's law would apply in the absence of a choice-of-law provision. *Elgar*, 238 Conn. at 850. This determination is guided by the factors set forth in Section 188 of the Restatement: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties."

These factors weigh heavily in favor of the application of Colorado law. There is no dispute that Myla lives and works in Colorado, and the restrictive covenants relate to his ability to continue to live and work in Colorado. . Moreover, Mr. Myla entered into the Agreements when he worked for Charter, in Colorado. While Charter is incorporated in Delaware, its headquarters

are in Connecticut, and it conducts business around the world, including Colorado, and employed Mr. Myla in Colorado. Thus, the location with the greatest residency of the parties is Colorado. For these reasons, Colorado law applies to this dispute.

      2.    **Plaintiff's claims for breach of the Agreements fail as a matter of law because the restrictive covenants are void and unenforceable.**

      a.    **The restrictive covenants are void for violating Colorado notice requirements.**

Section 4 of C.R.S. § 8-2-113 sets forth the notice requirements for covenants not to compete in Colorado. The Agreements do not comply with the requirements. Charter does not allege, nor do the Agreements demonstrate, that Myla received any separate notice that the Agreements contained restrictive covenants, let alone 14 days before the alleged restrictions went into effect. In violation of C.R.S. § 8-2-113(4)(b), the restrictive covenants are not written in "clear and conspicuous terms," and there is no notice relating to the restrictive covenants signed by Myla.

Rather, the purported covenants are in the midst of two documents that are approximately 20 pages long. The "Non-Competition and Non-Interference" provisions each cover nearly three-and-a-half pages, and do not meet the statute's requirement that the covenants be written in "clear and conspicuous terms." The meaning of the restrictive covenants cannot even be understood without reviewing and understanding the attached two-page schedule, which also includes multiple, lengthy paragraphs about the sorts of "Competitive Businesses" with whom competition and interference is purportedly limited.

The Colorado statute is clear. If an employer fails to comply with the notice requirements in C.R.S.§ 8-2-113(4), the covenant "is void." Here, Charter's failure to comply with section 4 and provide the required notice requires a determination that the restrictive covenants are void. For this reason, Plaintiff's claims for breach of the Agreements fails as a matter of law.

  **b.**  **The restrictive covenants are impermissibly broad and cannot be enforced.**

Section 8-2-113(2)(a) makes clear that, in Colorado, unless certain exceptions are met, "any covenant not to compete that restricts the right of any person to receive compensation for performance of labor for any employer is void." The statute provides for certain exceptions, but these exceptions must be "narrowly construed." *Phoenix Capital, Inc. v. Dowell*, 176 P.3d 835, 842 (Colo. App. 2007).

Section 2(b) creates an exception for certain highly compensated employees, but the exception applies only "if the covenant not to compete is for the protection of trade secrets and is no broader than is reasonably necessary to protect the employer's legitimate interest in protecting trade secrets." The Agreements' purported restrictive covenants are far broader than necessary to protect Charter's legitimate interests in protecting trade secrets. The restrictive covenants do not take into account Myla's specific role at Charter or purport to limit his ability to work for other companies to similar roles. Rather, the covenants restrict him from working from companies in a variety of industries, including any company that sells or advertising "analog or digital technology." If enforced, no job in technology would be available to Myla. The breadth of the restrictive covenants and the definition of "Competitive Business" requires the determination that the covenants are far broader than reasonably necessary to protect Charter's trade secrets. Construing this exception narrowly, the Court should determine that the Agreements' restrictive covenants do not meet this exception and, therefore, are void.

Section 3(b) also provides an exception for a "reasonable confidentiality provision relevant to the employer's business that does not prohibit disclosure of information that arises from the worker's general training, knowledge, skill, or experience, whether gained on the job or otherwise . . . ." Again, the breadth of the Agreements' restrictive covenants compels the conclusion that

this exclusion does not apply because the Agreements do not carve out disclosure of Myla's general training, knowledge, skill, or experience. The Agreements purport to prohibit Myla from working for companies involve with any technology. Charter's claims also support the conclusion that Charter's claims for injunctive relief relate not to information or documents taken by. Myla but to his general experience working for Charter. Compl. at ¶ 68 (referring to the "inevitable misappropriation of Charter's trade secrets"). Construing this exception narrowly, the Court should determine that it does not apply, and the Agreements' restrictive covenants are void.

Finally, under Colorado law, a non-compete agreement must be limited in both duration and geographic scope. *Nat'l Graphics Co. v. Dilley*, 681 P.2d 546, 547 (Colo. App. 1984). If a non-compete agreement is not limited as such, then it is void. *Id.* The Agreements' covenants are not geographically limited even to the United States. They extend beyond the United States, to "any other country or territory where the Company then conducts its business." Charter does not allege that Myla worked throughout the nation or internationally, and there is no basis to restrict his ability to work for any technology company throughout the country or the globe. The restrictive covenants are impermissibly overbroad in scope and should be determined to be void. For these reasons, Plaintiff's claims for breach of the Agreements fail as a matter law because Charter is unlikely to succeed on the merits of its claims that Myla breached the Agreements

### c.    Plaintiff's Connecticut Uniform Trade Secrets Claim Fails as a Matter of Law.

Charter does not allege that Myla has taken or used its trade secrets, but that he will "inevitably" misappropriate those secrets in the course if his employment with Metronet. Compl. at ¶ 17. Charter's reliance on inevitable disclosure of trade secrets as a basis for granting injunctive relief is both legally and factually flawed. As an initial matter, Colorado law should dictate the applicability of inevitable disclosure. See supra, Section discussion CO law applying. Uunlike

Connecticut, Colorado has never adopted the doctrine of inevitable disclosure. *See Cargill Inc. v. Kuan*, Case No. 14-cv-2325-RM-MJW, 2014 U.S. Dist. LEXIS 148818, at *19 (D. Colo. 2014) ("The Court need not reach the issue of whether 'inevitable disclosure' . . . supports a violation of the Act."); *Xantrex Tech., Inc. v. Advanced Energy Indus., Inc.*, Case No. 07-cv-0234-WYD-MEH, 2008 U.S. Dist. LEXIS 41206, at *50 (D. Colo. May 23, 2008) ("I find that it is unnecessary for me to determine whether or not the Colorado legislature intended to recognize the inevitable disclosure doctrine.").

Rather, on the rare occasions courts in Colorado have even mentioned the inevitable disclosure doctrine, in keeping with Colorado's preference of employee mobility, courts have not been generous. *See Cargill*, 2014 U.S. Dist. LEXIS, at *19 ("The [CUTSA] speaks not of 'inevitable disclosure' but, rather of threatened disclosure.'"). Wwhen interpreting the meaning of "threatened misappropriation" under the Colorado Uniform Trade Secrets Act, Colorado courts have likewise required a former employer to meet a high burden. *See Id.*, at *21 (finding the facts insufficient to establish "threatened misappropriation" where a former employee returned information that they had previously possessed and the evidence support the former employee could not recall details of business plans, which resulted in generalized knowledge); *Xantrez*, 2008 U.S. Dist. LEXIS, at *51 ("[F]or a party to make a claim of threatened misappropriation, whether a theory of inevitable disclosure or otherwise, the party must establish more than the existence of generalized trade secrets and competitor's employment of the party's former employee who has knowledge of trade secrets"); *Del Monte Fresh Produce Co. v. Dole Food Co.*, 148 F. Supp. 2d 1326, 1339 (S.D. Fla. 2001) (cited by the United States District Court for the District of Colorado in *Xantrex*) ("In an inevitable disclosure case, a court can issue an injunction to prevent an

employee from working for the former employer's competitor if the employer can demonstrate a *real and present danger of disclosure*.") (emphasis added).

However, even if inevitable disclosure could apply to this case, under either Colorado or Connecticut law, it is not a basis for injunctive relief. The "inevitable disclosure doctrine" is a disfavored doctrine that is rarely invoked in Connecticut that "stands for the proposition that in some circumstances a court will find that a defendant cannot help but reveal trade secrets." *Sunbelt Rentals, Inc. v. McAndrews*, 552 F. Supp.3d 319, 330–31 (D. Conn. 2021). To consider whether injunctive relief by a prior employer should be granted on the basis of inevitable disclosure, courts consider: "(1) [whether] the employers in question are direct competitors providing the same or very similar services; (2) [whether] the employee's new position is nearly identical to his old one, such that he could not reasonably be expected to fulfill his new job responsibilities without utilizing the trade secrets of his former employer; and (3) [whether] the trade secrets at issue are highly valuable to both employers." *Id.* (citation omitted). Here, the facts alleged by Charter do not support that injunctive relief should be granted on the basis of inevitable disclosure because there is not "a real and present danger of disclosure" and no facts supporting the proposition that disclosure "is likely, if not inevitable[.]" *Del Monte*, 148 F. Supp. 2d at 1339; *see Branson Ultrasonics Corp. v. Stratman*, 921 F. Supp. 909, 913 (D. Conn. 1996) (finding inevitable disclosure applicable where there was significant overlap between a job at a new and former employer). Instead, Plaintiff bases the allegations for misappropriation of trade secrets on conclusory statements made upon information and belief. Plaintiff does not plead what sensitive, confidential information, or trade secrets Myla obtained or has allegedly used or will inevitably use in his role at Metronet. For these reasons, Charter's claims for injunctive relief fail as a matter of law and should be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant Myla's motion, dismiss this case pursuant to Rule 12(b)(3) or 12(b)(6), or, in the alternative, transfer this case to the District of Colorado pursuant to 28 U.S.C. § 1404(a) or 1406.

**DEFENDANT**
**PRASHANTH MYLA**

By: /s/ Glenn A. Duhl
Glenn A. Duhl ct03644
Elizabeth A. Ditman ct31718
Zangari Cohn Cuthbertson Duhl & Grello P.C.
59 Elm Street, Suite 400
New Haven, CT 06510
GAD.: (203) 786-3709
EAD: (203) 786-3717
Fax: (203) 782-2766
gduhl@zcclawfirm.com
lditman@zcclawfirm.com

and

Jacqueline Guesno, Pro Hac Vice
HKM Employment Attorneys, LLP
518 17th Street, Suite 1100
Denver, Colorado 80202
Tel.: (720) 668-8989
jguesno@hkm.com

21