# EXHIBIT B

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT
### NEW HAVEN DIVISION

| | | |
|---|---|---|
| CHARTER COMMUNICATIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO: 3:25-cv-00025-SFR |
| | ) | |
| PRASHANTH MYLA, | ) | |
| | ) | |
| Defendant. | ) | January 24, 2025 |
| | ) | |
| | ) | |
| | ) | |

## DECLARATION OF CRAIG COWDEN

I, Craig Cowden, declare and state as follows:

1.      I am over 18 years of age and competent to provide this declaration.

2.      My title is EVP, Chief Product and Technology Officer for Metro Fibernet, LLC ("Metronet"). In this role, I am personally familiar with and oversee Prasanth Myla's ("Myla") work contributions. This declaration is based on my personal knowledge of, and involvement in, the matters described herein. If called and sworn as a witness, I could and would competently testify to the matters discussed herein.

3.      Myla's title with Metronet is SVP and Chief Information Officer.  In that capacity, Myla's job duties focus on Information Technology (IT) support for wireline fiber services, including fiber construction, field operations (installation and repair), and customer technical support. This work has no connection whatsoever to mobile technology.  Related to developing this platform, Myla works to develop and maintain IT systems, to support outside plant technologies and construction management, customer technical support, and field operations. All of this work relates to Fiber /

101670319.2

Passive Optic Network (PON) technologies and bears no connection at all to mobile communication technology.

4.      In fact, Metronet offers no mobile technology or service offerings to its customers, and never has. Furthermore, Metronet has no mobile technology product roadmap and has no intention to create one. Therefore, Myla's job duties do not include any responsibilities relating to any mobile services whatsoever.

5.      While Metronet has entered a joint venture agreement with T-Mobile, Inc. ("T-Mobile"), that transaction has not yet received government approval.  However, even if the joint venture is approved, Myla will remain a Metronet employee and will not be under the direction or control of T-Mobile. If the transaction is approved, Myla's job responsibilities will largely remain as they are currently defined. That is, he will continue to focus on the IT system support of wireline fiber services, and he will have no responsibility for the development or support of mobile services.

6.      Myla's job duties with Metronet do not include any responsibilities relating to mobile network operators ("MNO") or the technical requirements to activate and manage mobile lines with MNO partners.

7.      Myla's job duties with Metronet do not include any responsibilities relating to any product comparable to either Charter's Speed Boost or "Home Wifi" roaming services. More broadly, Metronet's product offerings do not include any cellular-based products or services in any capacity. As a result, Metronet does not provide, is not developing, and has no plans to develop any product or service designed to encourage customers to use WiFi rather than cellular service.

8.      Myla's job duties with Metronet do not include any responsibilities relating to techniques to prevent theft of service, efficiently activate mobile hardware, minimize load on cell towers, or maximize profitability of mobile and wireline internet in concert.

2

9. Myla's job duties with Metronet do not include any responsibilities relating to the strategic planning of a mobile roadmap, nor does Metronet have a "mobile roadmap" given that it does not offer or provide mobile/cellular products or services.

10. Although Myla's job duties technically include the activation of internet and voice services, this is not unique to Metronet or Charter. Every telecommunications service provider has a defined process for customer activation, and there is generally nothing proprietary to the process. As a result, while the activation process is not proprietary, nothing Myla learned about how Charter executes its activation process would be relevant to Metronet.

11. Myla's job duties with Metronet do not include any responsibilities relating to optimizing the interoperability of mobile services with traditional internet services. Again, Metronet has no mobile platform or capability, and no mobile product roadmap to enable one.

12. Myla's job duties with Metronet do not include any responsibilities relating to activating and managing mobile service via MNO relationships and internal networks.

13. While Myla's job duties are not related to the development of a Dynamic Host Configuration Protocol ("DHCP"), it must be noted that DHCP is a well-defined internet standard generally utilized by every internet service provider, and Metronet utilizes industry standard solutions to manage its DHCP infrastructure.

14. While Metronet does perform configuration and management of Customer Premise Equipment ("CPE"), the way that Metronet does this is materially different from Charter because the two companies generally utilize different technologies. Charter generally uses DOCSIS (Data Over Cable System Interface Specification) technology, including cable modems at the customer premise and a Cable Modem Termination System (CMTS) as an aggregation element in the access network. Conversely, Metronet uses an Optical Network Terminal ("ONT") at the customer

3

premise and an Optical Line Terminal (OLT) as an aggregation element in the access network - designed for fiber technology.  Nothing Myla may have learned about Charter's CPE configuration and management processes would be relevant to Metronet's operations.

15.     The same is true regarding anything Myla may have learned about how Charter managed and delivered firmware to CPE. That is, Metronet uses industry standard solutions to manage its CPE firmware delivery.

16.     While Metronet utilizes speed tests, this is a well-defined industry standard protocol, and nothing in Myla's job duties would disclose any confidential or proprietary information relating to Charter's use of this standard protocol.

17.     Metronet does not offer products or services that utilize the TR-069/369 standard for the management and activation of CPE.

18.     Myla's job duties with Metronet do not include any responsibilities relating to the identification and/or mitigation of "theft of service."

19.     As repeatedly noted above, Metronet does not offer cable or mobile network products or services. Consequently, Myla's job duties with Metronet do not include any responsibilities that could possibly relate to Charter's technologies and designs in these areas.

20.     Again, as noted repeatedly above, Metronet does not offer produces or services relating to mobile technology. As a result, Myla's job duties with Metronet do not include any responsibilities relating to the building and deploying of solutions associated with increasing mobile phone speed while connected to WiFi.

21.     Myla's job duties focus on Information Technology support for wireline services, including fiber construction, field operations (installation and repair), and backend customer technical support.  Further, because Metronet does not offer any products or services relating to

4

mobile technologies, Myla's job duties do not include any responsibilities relating to those technologies, including anything comparable to Charter's Speed Boost and/or Home Wifi roaming services. For the same reason, Metronet is not developing, and has no plans to develop, comparable product or service offerings.

22.     Further, Myla has no responsibilities relating to T-Mobile's product development. Myla is a Metronet employee whose work is separate and distinct from any work in which T-Mobile may be engaged or planning to engage.

23.     Myla was not hired by Metronet for any information, trade secrets, or business contacts that he acquired while at Charter. I am not aware of Myla using any trade secrets or proprietary information of Charter at Metronet or of him being asked to or soliciting Charter clients.

**[Signature on the following page]**

5

**PURSUANT TO 28 U.S.C. § 1746, I DECLARE UNDER PENALTY OF PERJURY**

**THAT THE FOREGOING IS TRUE AND CORRECT.**

Executed this __29th__ day of __January__, 2025 at __1:24 pm__, __MT__.

Signed by:

*Craig T. Cowden*

A5CF58E52D74444...

Craig Cowden

101670319.2