UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | |
|---|---|
| CHARTER COMMUNICATIONS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO: 3:25-cv-00025-SFR |
| | ) |
| PRASHANTH MYLA, | ) |
| | ) |
| Defendant. | ) March 31, 2025 |
| | ) |
| | ) |
| | ) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF CHARTER COMMUNICATIONS, INC.'S MOTION TO DISMISS COUNTERCLAIM**

### I.     INTRODUCTION

Charter filed this lawsuit pursuant to a narrow exception set forth in the Parties' Restricted Stock Unit and Nonqualified Stock Option Agreements (the "Agreements"), which allows the Parties to seek emergency provisional relief in Court. The Agreements make clear that all other disputes between the Parties—including those related to "interpretation, performance or breach"—must be resolved in binding arbitration. Consistent with these strictures, Charter is separately pursuing its claims for money damages against Myla in arbitration, and Myla has filed a counterclaim in that proceeding seeking statutory and money damages against Charter.

Notwithstanding, Myla filed the instant Counterclaim, which is nearly identical to the one he submitted in the arbitration. And, unlike Charter's claims in this lawsuit, Myla's Counterclaim seeks money damages and does not request a temporary restraining order or a preliminary injunction. Pursuant to the plain terms of the Parties' Agreements, Myla's Counterclaim must be dismissed because it is bound to (and already proceeding in) binding arbitration. For these reasons

1

and those set forth below, the Court should grant this Motion and dismiss Myla's Counterclaim pursuant to Rule 12(b)(6) and the Agreements.

## II.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

**A.     Myla Agrees to Arbitrate Claims Related to the Agreements.**

According to Myla's Counterclaim, "On or about January 16, 2024, Myla and Charter entered into two agreements: the Restricted Stock Unit Agreement (the 'RSU Agreement') and the Nonqualified Stock Option Agreement (the 'SO Agreement')." (Doc. 51 at 33, ¶ 8.) Myla incorporates the Agreements into his Counterclaim by reference. (*See id.*, ¶ 9 (referencing Docs. 1-1 and 1-2).) Both of those agreements contain the following mandatory arbitration provision:

> Any controversy, dispute, or claim between the parties to this Agreement, including any claim arising out of, in connection with, or in relation to the formation, interpretation, performance or breach of this Agreement shall be settled exclusively by arbitration . . . . Arbitration shall be the exclusive remedy for determining any such dispute, regardless of its nature.

(Doc. 1-1 at 12, ¶ 9.1; Doc. 1-2 at 6–7, ¶ 7.1) (the "Arbitration Provision"). The Arbitration Provision contains one exception to this this general requirement for actions seeking provisional relief:

> Either party may in an appropriate matter apply to a court for provisional relief, including a temporary restraining order or a preliminary injunction, on the ground that the award to which the applicant may be entitled in arbitration may be rendered ineffectual without provisional relief.

(*Id.*) On January 7, 2025, Charter filed this lawsuit pursuant to the above exception, exclusively seeking provisional relief in the form of a temporary restraining order and preliminary injunction pending the outcome of the arbitration. (*See* Doc. 1 at 24.) Consistent with the Arbitration Provision, Charter separately submitted an arbitration demand against Myla for money damages, among other relief (the "Arbitration"). (*See* Doc. 51 at 6 n.4 (Myla acknowledging that Charter

2

submitted an arbitration demand against him).) In response, Myla submitted a counterclaim in the Arbitration that is nearly identical to the one he has now filed in Court (Doc. 51).

**B.     Myla Files the Instant Counterclaim in Violation of the Arbitration Provision.**

On March 10, 2025, in response to Charter's Complaint and in blatant violation of the Arbitration Provision, Myla filed the instant Counterclaim, asserting a single claim for "Unlawful Enforcement" under Colorado law.[1] Myla argues that the restrictive covenants contained in the Agreements are overbroad under Colorado law and, as a result, Charter has violated Colorado law by attempting to enforce them. (Doc. 51 ¶¶ 29–38.) "Myla seeks the statutory penalty of $5,000.00 each for Charter's violation of C.R.S. § 8-2-113, as well as Myla's actual damages, reasonable costs, and attorneys' fees." (*Id.* at 38 ¶ 38.) Myla does not request a temporary restraining order, preliminary injunction, or allege any other exigency that would satisfy the Arbitration Provision's exception requiring that there be a risk "the award . . . in arbitration may be rendered ineffectual without provisional relief." (*Compare id.* at 32–39, *with* Doc. 1-1 at 12, ¶ 9.1, *and* Doc. 1-2 at 6–7, ¶ 7.1). This Motion followed.

### III.     ARGUMENT AND CITATION OF AUTHORITY

**A.     The Legal Standard for Motion to Dismiss Pursuant to Arbitration Provision.**

In this Circuit, where a party seeks an order dismissing a claim pursuant to an arbitration agreement, rather than an order compelling it to arbitration, the standards applicable to a motion to dismiss apply. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) ("We agree with the district court that because [the employer's] motion to dismiss neither sought an order

---

[1] Charter maintains that Colorado law does not apply to this dispute, and Myla's counterclaim fails to state a claim as a result. *See* Fed. R. Civ. P. 12(b)(6). However, the Court has concluded that it is premature to rule on which law applies at the motion-to-dismiss stage, so Charter does not seek dismissal on that basis at this time. (*See* Doc. 50 at 53:19–22 ("In sum because the factual record relevant to the choice-of-law analysis is underdeveloped, I deny the 12(b)(6) motion to dismiss Counts 1 and 2 of the complaint.").)

compelling arbitration nor indicated that [it] would seek to force [the employee] to arbitrate in the future, it was proper not to construe the motion to dismiss as a motion to compel arbitration."). Here, Charter is explicitly asking the Court to dismiss Myla's Counterclaim, not compel it to arbitration, because Myla already submitted a nearly identical counterclaim in the Arbitration.

"To survive a motion to dismiss, a [counterclaim] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In considering a motion to dismiss, a counterclaim "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). Even where a document is not incorporated by reference, the Court may nevertheless consider it where the counterclaim "relies heavily upon its terms and effect," which renders the document "integral" to the counterclaim. *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995). However, even where a document is considered "integral to the [counterclaim], it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *Nicosia*, 834 F.3d at 230.

Here, the Agreements (and the Arbitration Provisions contained therein) are both integral to Myla's Counterclaim and their authenticity is not disputed. The Agreements are integral because their existence is fundamental to Myla's allegation of unlawful enforcement, he quotes them throughout, and he incorporates them by reference. (*See* Doc. 51 at 33–37.) Moreover, the only dispute over the Agreements is their enforceability, not their existence or authenticity. (*See id.* at 33 ¶¶ 8–9 (admitting Myla and Charter entered into the Agreements and citing to their docket entries).) Indeed, in Myla's own motion to dismiss, he acknowledged that the Court can and should consider the Agreements at the motion-to-dismiss stage. (*See* Doc. 27-1 at 3 n.1 (citing *McCarthy*

4

*v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).)  Thus, the Court may properly consider the Agreements in deciding this Motion and, for the reasons described below, should dismiss Myla's Counterclaim pursuant to them.  *See Nicosia*, 834 F.3d at 230.

**B.     Myla's Counterclaim Must Be Dismissed.**

The Federal Arbitration Act (the "FAA") provides that "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of [the] contract . . . shall be valid, irrevocable, and enforceable."[2]  9 U.S.C. § 2.  "[T]his policy is founded on a desire to preserve the parties' ability to agree to arbitrate, rather than litigate, disputes." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012).  "[W]hen it is apparent—on the face of the complaint and documents properly incorporated therein—that claims are subject to arbitration, a district court may dismiss in favor of arbitration without the delay of discovery." *Nicosia*, 834 F.3d at 231.

Here, Myla concedes that "[he] and Charter entered into" the Agreements, which contain the Arbitration Provisions.  (*See* Doc. 33 ¶ 8.)  Indeed, Myla is actively participating in the Arbitration proceeding in parallel with this proceeding, and he filed a nearly identical counterclaim in that Arbitration.  (*See* Doc. 51 at 6 n.4 (Myla acknowledging that Charter submitted an

---

[2] The FAA applies to the Arbitration Provision for two independent reasons.  First, the Agreements involve interstate commerce because Myla (a Colorado resident) received equity in Charter (a Delaware corporation headquartered in Connecticut) in exchange for his promises not to engage in interstate competition.  *Matter of Arb. Between Chung & President Enterprises Corp.*, 943 F.2d 225, 229 (2d Cir. 1991) (explaining that FAA applies when, as relevant here, "the underlying transaction involves interstate commerce").  Second, even if Delaware arbitration law governed, pursuant to the Delaware choice-of-law provision in the Agreements, Delaware courts would still apply the FAA.  *See Freres v. Solazyme, Inc.*, 154 F. Supp. 3d 68, 74 (D. Del. 2015)*, aff'd sub nom. Roquette Freres S.A. v. Solazyme, Inc.*, 673 F. App'x 219 (3d Cir. 2016) (explaining that Delaware's arbitration statute requires that any arbitration provision specifically reference the Delaware Uniform Arbitration Act and, if no such reference exists (like here), Delaware courts apply the FAA).

arbitration demand against him).) Myla's Counterclaim obviously falls within the scope of the Arbitration Provision because it is a "claim between the parties" that is "arising out of, in connection with, or in relation to" the "interpretation, performance or breach of this Agreement." (Doc. 1-1 at 12, ¶ 9.1; Doc. 1-2 at 6–7, ¶ 7.1). That is, Myla's Counterclaim inherently requires resolution of whether the Agreements' restrictive covenants are enforceable—a dispute that is bound to arbitration. (*See generally* Doc. 51 at 32–38.) Further, Myla's Counterclaim does not fall within the narrow "provisional relief" exception to arbitrability because Myla merely seeks statutory penalties and money damages. (*See id.* at 38 ¶ 38.) Myla does not request a temporary restraining order, preliminary injunction, or claim that there is a risk "the award . . . in arbitration may be rendered ineffectual without provisional relief." (*Compare id*. at 32–39, *with* Doc. 1-1 at 12, ¶ 9.1, *and* Doc. 1-2 at 6–7, ¶ 7.1). Thus, Myla's Counterclaim falls squarely within the scope of the Arbitration provision, may not proceed in Court, and should be dismissed.

## IV.   CONCLUSION

For the reasons set forth above, the Court should grant this Motion and dismiss Myla's Counterclaim pursuant to Rule 12(b)(6) and the Agreements.

Dated: March 31, 2025

**KABAT CHAPMAN & OZMER LLP**

*/s/ Nathan D. Chapman*
Nathan D. Chapman (*pro hac vice*)
Georgia Bar No. 244954
Chadwick L. Williams (*pro hac vice*)
Georgia Bar No. 161149
171 17th Street NW, Suite 1550
Atlanta, Georgia 30363
Telephone: (404) 400-7300
Facsimile: (404) 400-7333
nchapman@kcozlaw.com
cwilliams@kcozlaw.com
*Attorneys for Plaintiff*

**MURTHA CULLINA LLP**
Patricia Reilley
Fed. Bar No. 08352
Emily McDonough Souza
Fed Bar No. 30499
One Century Tower, 265 Church St.
9th Floor
New Haven, CT 06510
Telephone: 203-772-7700
Facsimile: 203-772-7723
preilly@murthalaw.com

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was filed electronically and served with the Court's CM/ECF system upon the following:

Glenn A. Duhl
gduhl@zcclawfirm.com
ZANGARI COHN CUTHBERTSON DUHL & GRELLO P.C.
59 Elm Street, Suite 400
New Haven, Connecticut 80202

Elizabeth Ditman
Lditman@zcclawfirm.com
ZANGARI COHN CUTHBERTSON DUHL & GRELLO P.C.
59 Elm Street, Suite 400
New Haven, Connecticut 80202

Jacqueline Guesno
jguesno@hkm.com
HKM EMPLOYMENT ATTORNEYS, LLP
518 17th Street, Suite 1100
Denver, Colorado 80202

*Attorneys for Defendant*

Dated: March 31, 2025

*s/ Nathan D. Chapman*
Nathan D. Chapman